UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BOBBIE HENDERSON, wife of, and                     CIVIL ACTION
LOUIS HENDERSON

VERSUS                                             NO.  04-1700

GEONET GATHERING, ET AL                            SECTION  "N"  (4)

### ORDER AND REASONS

Presently before the Court are:  (1) Defendants' Motion for Partial Summary Judgment (Rec. Doc. No. 55);  (2) Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. No. 60); and (3) Geonet Gathering, L.L.C.'s Cross-Motion for Summary Judgment (Rec. Doc. No. 90).  For the reasons stated herein, **IT IS ORDERED** that Defendants' motion is **GRANTED** and that Plaintiffs' cross-motion is **DENIED**.  **IT IS FURTHER ORDERED** that Geonet Gathering, L.L.C.'s  cross-motion is **DENIED**.

### I.  BACKGROUND

Plaintiff  Louis Henderson ("Henderson") began working at a dock facility in Gibson, Louisiana, in 1998.  The facility is used for crude oil blending.  In 1998, the facility was owned by Defendant Geonet Gathering, L.L.C. ("Geonet").  Geonet transferred the facility to Defendant Williams Holdings Terminal, L.P.,  in or about October 2001.  Defendant Magellan Midstreams, L.P. ("Magellan") became the formal owner and operator of the facility in January

1

2004.[1]  Plaintiffs asserted various claims against Defendants, including a claim of employment discrimination based on race and a claim for long term disability ("LTD") benefits under ERISA. All of Plaintiffs' claims except his claim under ERISA have been settled.[2]  Geonet's cross-claim for contractual defense and indemnity likewise remains at issue, and is the subject of Geonet's cross-motion for summary judgment against  Magellan, f/k/a Williams Energy Partners, L.P., that presently is before the Court.

Regarding Henderson's claim for LTD benefits, he experienced shortness of breath, and saw his physician, on April 29, 2003.  He was diagnosed with coronary artery disease, and had bypass surgery, on or about May 1, 2003.  Thereafter, he was never able to return to work, as the limitations imposed by his physician could not be accommodated by Williams/Magellan.  Henderson states that he was paid his normal pay for May, June, and July.  In July 2003, he applied for and received short term disability ("STD") benefits through Williams for a period of 26 weeks.  Having exhausted the STD benefits, Henderson applied for LTD benefits in January 2004, which were denied.  Having unsuccessfully pursued his appeal remedies with the Plan administrator, Henderson

---

[1]      The Court is somewhat uncertain regarding the exact nature of the relationship between the Williams entities and Magellan.  The parties have not indicated that this information is material to their dispute.  Instead, Magellan is simply treated as the successor-in-interest to Williams.  The supplemental memorandum submitted by Magellan and the Williams parties (Rec. Doc. No. 93) states that, as agreed by counsel and citing 29 U.S.C. §1132(d)(2), The Williams Companies, Inc. Long Term Disability Plan ("the Plan") is the only defendant in the action, if any, that should be held liable for any benefits or judgment rendered in favor of Plaintiffs under ERISA. The Court has not been apprised of any objection to this assertion subsequent to the filing of the Defendants' supplemental memorandum.

[2]      Prior to the settlement, the Court rendered summary judgment in Defendants' favor on certain of Plaintiffs' claims.  *See* May 17, 2006 Minute Entry (Rec. Doc. No. 75).  With others, summary judgment was denied.  The parties' motions were taken under advisement with respect to the ERISA claim.

seeks judicial relief from this Court.

## II.  LAW AND ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986);  *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553;  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986);  *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in

the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

4

**A.      Cross Motions for Summary Judgment Filed by Plaintiffs and Williams and Magellan Parties (Rec. Doc. Nos. 55 and 60)**

These motions address the denial by the The Williams Companies, Inc. Long Term Disability Plan ("the Plan") of Henderson's claim for LTD benefits.   There is no dispute that the Plan and Henderson's claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.

The Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, (1989), explained that a denial of a claim for benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . ."   Regardless of the authority to determine eligibility or construe the plan, however, *factual determinations* made as a part of a benefits review are always reviewed only for an abuse of discretion.  *Meditrust Fin. Servs. Corp. v. Sterling,* 168 F.3d 211,  213 (5th Cir. 1999).

Fifth Circuit jurisprudence since *Firestone* provides further direction regarding its application.  In *MacLachlan v. ExxonMobil Corp.,* 350 F.3d 472,  478-79 (5th Cir. 2003) (footnotes omitted), the Court explained:

> Where a plan administrator has been vested with the discretionary authority to interpret a benefit plan, a district court reviews the administrator's interpretations only for abuse of discretion. [] "[O]ur review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Vega* [*v. Nat'l Life Ins. Servs.,Inc.,* 188 F.3d 287, 297 (5th Cir. 1999) (en banc)].
>
> Where, however, an administrator's decision is tainted by a conflict of interest, the court employs a "sliding scale" to evaluating whether there was an abuse of discretion. *Id.* This approach does not mark a change in the applicable standard, but only requires the court to

5

reduce the amount of deference it provides to an administrator's decision. []

The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claim that there is a conflict. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Id.* Where, however, only "a minimal basis for a conflict is established, we review the decision with 'only a modicum less deference than we otherwise would.' " *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 343 (5th Cir.2002) (quoting *Vega,* 188 F.3d at 301).

Regarding the Court's application of the abuse of discretion standard, the Fifth

Circuit has established a two-step process. Specifically, as set forth in *Wildbur v. Arco Chem.*

*Co.,* 974 F.2d 631, 637-38 (1992) (footnotes omitted):

First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. *E.g., Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.), *cert. denied,* 498 U.S. 939, 111 S. Ct. 344, 112 L. Ed.2d 308 (1990).[] In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Jordan,* 900 F.2d at 56.

If a court concludes that the administrator's interpretation is incorrect, the court must then determine whether the administrator abused his discretion. Three factors are important in this analysis:

(1) the internal consistency of the plan under the administrator's interpretation,

6

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith.

*Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 445-48 (5th Cir.1989). Although the fact that an administrator's interpretation is not the correct one does not in itself establish that the administrator abused his discretion, "[w]hen [his] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." *Id.* at 445, quoting *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982).

Significantly, the Fifth Circuit has declined to impose a duty on even a self-interested administrator with discretionary authority to "conduct a reasonable investigation" as part of its benefits determination. *Vega*, 188 F.3d at 297-99. The Court of Appeal elaborated as to this decision:

> There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.
>
> Instead, we focus on whether the record adequately supports the administrator's decision. In many cases, this approach will reach the same result as one that focuses on whether the administrator has reasonably investigated the claim. The advantage to focusing on the adequacy of the record, however, is that it (1) prohibits the district court from engaging in additional fact-finding and (2) encourages both parties properly to assemble the evidence that best supports their case at the administrator's level.

\* \* \*

7

> We hold today that, when confronted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator.  Under our own precedent and the Supreme Court's ruling in *Bruch,* we must give deference to the administrator's decision. That the administrator decides a claim when conflicted, however, is a relevant factor. In a situation where the administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial. [].

*Vega*, 188 F.3d at 298-99 (footnotes omitted).

With respect to the evidence that a district court may consider in reviewing the administrator's factual findings and ultimate benefit determination, the en banc *Vega* court's discussion is particularly instructive:

> We turn next to the panel's use of the doctors' affidavits in reaching its decision. A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator. *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.,* 168 F.3d 211, 215 (5th Cir.1999); *Schadler v. Anthem Life Insurance Company,* 147 F.3d 388, 394-95 (5th Cir.1998); *Thibodeaux v. Continental Casualty Insurance,* 138 F.3d 593, 595 (5th Cir.1998); *Barhan v. Ry-Ron Inc.,* 121 F.3d 198 (5th Cir.1997); *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 828-29 (5th Cir.1996); *Sweatman v. Commercial Union Insurance Co.,* 39 F.3d 594, 597-98 (1994); *Duhon v. Texaco Inc.,* 15 F.3d 1302, 1306-07 (5th Cir.1994); *Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 101-02 (5th Cir.1993); *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 639 (5th Cir.1992).
>
> Our case law also makes clear that the plan administrator has the obligation to identify the evidence in the administrative record and that the claimant may then contest whether that record is complete. *See, e.g., Barhan,* 121 F.3d at 201-02. Once the administrative record has been determined, the district court may not stray from it except

for certain limited exceptions. To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim. Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible. *See Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 639 & n. 15 (5th Cir.1992)(compiling cases). Likewise, evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible. However, the district court is precluded from receiving evidence to resolve disputed material facts - i.e., a fact the administrator relied on to resolve the merits of the claim itself.

In this case, the record amounted to a number of exhibits attached to Pan-American's motion for summary judgment. The exhibits contained the relevant plan documents, Mrs. Vega's medical record, and the phone logs documenting Pan-American's contact with Mrs. Vega's doctors. The dispute here was essentially a factual one that would resolve the merits of the claim: Did Mrs. Vega receive notice that she would need posterior repair surgery prior to applying for membership in the plan? The testimony that the Vegas sought to introduce is evidence related to this factual dispute, which easily could have been presented to the administrator by the Vegas' counsel. The district court therefore correctly held that it could not admit new evidence for the purpose of resolving this dispute on the merits of the claim.

Our motivating concern here is that our procedural rules encourage the parties to resolve their dispute at the administrator's level. If a claimant believes that the district court is a better forum to present his evidence and we permit the claimant to do so, the administrator's review of claims will be circumvented. This result is plainly contrary to *Bruch,* which requires us to apply an abuse of discretion standard of review. Although we recognize that there is a concern that a self-interested administrator can manipulate this process unfairly (e.g., by permitting the administrator to exclude from the record information that would weigh in favor of granting the claim), we think that this concern is largely unwarranted in the light of adequate safeguards that can be put in place.

Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. In *Moore,* we said that "we may consider only the evidence that was available to the plan administrator in

evaluating whether he abused his discretion in making the factual determination." *Moore,* 993 F.2d at 102. If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. *See, e.g., Wildbur,* 974 F.2d at 634-35. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.

We hold today that the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it. . . .  Furthermore, in restricting the district court's review to evidence in the record, we are merely encouraging attorneys for claimants to make a good faith effort to resolve the claim with the administrator before filing suit in district court; we are not establishing a rule that will adversely affect the rights of claimants.

In the light of our precedent and the abuse of discretion standard set forth in *Bruch,* we will not permit the district court or our own panels to consider evidence introduced to resolve factual disputes with respect to the merits of the claim when that evidence was not in the administrative record. We therefore stand by our precedent and reaffirm that, with respect to material factual determinations-those that resolve factual controversies related to the merits of the claim-the court may not consider evidence that is not part of the administrative record.

*Vega*, 188 F.3d at 299-300.

Finally,  an administrator's decision is affirmed if supported by substantial evidence. It is arbitrary, and thus an abuse of discretion, only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp*., 168 F.3d at 215 (internal citations omitted).

There is no dispute in this instance that the Plan gave the Plan administrator, referred to as the"Administrative Committee," discretionary authority to determine claims for benefits and

to interpret the Plan's provisions.[3]   The Plan also provides, in pertinent part:

1.1    "Active Work, Actively at Work".  An Eligible Employee's attendance in person at his usual and customary place of work, acting in the full-time performance of the duties of his job, including travel to other locations to the extent required by his job.[4]

* * *

1.8    "Date of Hire" means with respect to a person the date on which such person commences active regular full-time or part-time employment working over 20 hours per week with a Participating Company.[5]

* * *

2.1    Eligibility.  An Eligible Employee is a person who, on or after the Effective Date of the Plan, is a regular full-time employee or a regular part-time employee who works more than 20 hours per week in the service of a Participating Company and elected coverage under this Plan, but excluding any person who is:

(a)    a leased employee as defined in [Internal Revenue] Code Section 414(n);

(b)    covered by a collective bargaining agreement with a Participating Company unless such agreement specifically provides for coverage under the Plan;

---

[3]    See Plan, ¶¶5.4.2, Administrative Record ("A. Rec.") at 361-64,381-83, which was submitted into the record of this proceeding by Defendants in connection with their motion for summary judgment.  See Rec. Doc. Nos. 55-57.  (Unless otherwise indicated all citations are to pages bearing Bates numbers beginning with LH/TWC.)  Regarding the discretion granted to the Plan administrator, Plaintiffs do not contend that the Court must accord any less deference to the its determinations because of a conflict of interest.  The Court, however, does note  that as of January 24, 2003, the Plan was amended to provide that "[a]ll members of the Administrative Committee must be Employees of the [The Williams Companies, Inc.]."  In any event, without evidence as to the degree of the conflict, if any, the Court would only review the determination with only slightly less deference than otherwise is appropriate.  Cf. Vega, 188 F.3d at 301.

[4]    Id. at 334.

[5]    Id. at 335.

11

(c)     absent from work for any reason other than for Paid Time Off or on account of a short-term or long-term disability for which benefits are payable under a plan sponsored by the Company;

(d)     a term employee;

(e)     a temporary employee;

(f)     nonresident aliens;

(g)     seasonal employees;

(h)     any person who has a written contract with a Participating Company which states either that such person is not an employee or that such person is not entitled to any employee benefits, regardless of whether such person is actually an employee;

(i)     any person with a written employment contract with a Participating Company unless the contract specifically provides for participation in this Plan; or

(j)     weekly-paid employees employed at retail petroleum convenience stores in any capacity other than store manager.[6]

* * *

2.3    Effective Date of Participation.  Except as otherwise provided in this Article II, an Eligible Employee will become a Participant in the Plan on his Date of Hire, provided he is Actively at Work on such date.  If the Eligible Employee is not Actively at Work on the date he would otherwise begin participation, his participation shall commence on the first day on which he is Actively at Work.[7]

* * *

3.11    Pre-Existing Condition Limitation.  Notwithstanding any other provision of the Plan, no Monthly Disability Payments shall be made to any such Participant with respect to any Total Disability

---

[6]    *Id.* at 337-38.

[7]    *Id*. at 338.

which resulted from any illness, injury or condition, including without limitation any mental, psychoneurotic or personality disorder, for which such Participant received any treatment during the six month period prior to such Participant's date or hire or rehire; provided that the foregoing limitation shall not apply to any Participant upon the expiration of the 12-month period following such Participant's hire or rehire.[8]

* * *

5.9   <u>Information to be Supplied by a Participating Company.</u>   Each Participating Company shall supply to the Administrative Committee, within a reasonable time and in such form as the Administrative Committee shall require, the names of all Eligible Employees who incurred a Termination of Employment or layoff during the month, the date of termination of each, and the amount of compensation paid to each active Participant for the month.   The Administrative Committee may rely conclusively on the information certified to it by a Participating Company.   Each Participating Company shall provide to the Administrative Committee or its delegate such information as it shall from time to time need in the discharge of its duties.[9]

Henderson's   request for long term disability benefits initially was denied, as reflected in February 23, 2004 correspondence to him, on the basis of a "pre-existing condition" for which Plaintiff had received treatment during the six months prior to August 1, 2003.[10]   The letter reflects that, "[a]ccording to information provided by your employer,"   he became eligible for benefits on August 1, 2003, which also was his first date of absence.[11]   Responding to Henderson's August 20, 2004 appeal letter, and then September 24, 2004 request for reconsideration of the denial

---

[8]   *Id*. at 0354.

[9]   *Id*. at 366.

[10]   *Id*. at 315-17.

[11]   *Id.*

of his appeal, the Administrative Committee further concluded, on September 20, 2004, and October 14, 2004,  that Henderson  also was not entitled to benefits because he never was a "Participant" in the Plan for the reasons that he was never "actively at work," as defined in the Plan, on his August 1, 2003 "date of hire," or thereafter.

Throughout the briefing presented to this Court in connection with their motions, Plaintiffs devote much effort, and submit various forms of evidence, relative to establishing that Henderson was a "common law" employee of Geonet and then Williams.   Defendants, on the other hand, have discussed, at length, why Henderson should be found to be a "leased employee" and thus excluded from the definition of "Eligible Employee."   Specifically, Defendants maintain that Henderson was, at all relevant times, an employee of CDI Corporation, who contracted with Geonet and then Williams for the provision of Henderson's services on an independent contractor, not employee, basis.

Defendants explain that Williams, in April 2003, did agree to hire Plaintiff as a Williams employee, but elaborate that his anticipated hire date of May 2003 ultimately had to be changed to August 1, 2003, because of Plaintiffs' illness, heart attack and surgery in April and early May 2003.  August 1, 2003 was then selected as Henderson's hire date because that was when he was initially expected to resume his duties at the Williams dock. Because Henderson never reported to work on August 1, 2003, however, Defendants contend that  he was never "actively at work" on his "date of hire," and thus never became a Participant in the Plan.  Additionally, even if he was a participant as of August 1, 2003, the pre-existing condition provision would preclude his receipt of benefits.  Defendants finally object to the Court's consideration of the evidence presented by Plaintiffs for the first time in this judicial proceeding on the grounds that it was not submitted to the

Administrative Committee, and because, they contend, the "leased employee" provision of the Plan renders it immaterial.

Plaintiffs respond  that the Administrative Committee never found that Henderson was not a "Participant" or  was a "leased employee."  They further contend that Henderson worked for Geonet from 1998 until 2001, and then Williams as of November 28, 2001, or at the latest, January 2, 2002.   According to Plaintiffs, Williams offered a job *promotion* to Henderson, which he accepted, from Operator I to Operator II on or about April 7, 2003, not employment in the first instance.[12]  Plaintiffs maintain that CDI is simply a "payroll and staffing company" that "payrolled" him for Williams.

Despite the muddied waters created by the parties' briefing, they agree that, given the Plan definition of "Participant," the crucial issue in this case is whether Henderson's "Date of Hire" (as defined by the plan) was August 1, 2003, or sometime in 2001 or 2002 as Henderson maintains it was.  Given this, the next question for the Court is whether Henderson was an "Eligible Employee" on any date that he was "actively at work" (as defined by the Plan).

Regarding this question, the Court is somewhat inclined to conclude that, under the Plan, someone who qualified as a "common law employee" is not a "leased employee," as that term is defined in the Plan.  *See Burrey v. Pacific Gas and Elec. Co.*, 159 F.3d 388, 393-94 (9th Cir. 1998) (under §414(n) of IRS Code, a leased employee is someone who is *not* a common law employee); *Godshall v. Franklin Mint Co.*, 285 F. Supp. 2d 628, 632-33 (E. D. Penn. 2003);  Internal Revenue Service Notice 84-11, 1984 WL 264668 (IRS NOT);  *see also  Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340- 42 & n. 3 (11th Cir. 2000) (distinguishing leased employee provision there from one in

---

[12]        *See* Plaintiffs' Memorandum, Exh. 3 (Rec. Doc. No. 60).

*Burrey*);  *Curry v. CTB McGraw-Hill, L.L.C.*, 2006 WL 228951 (N.D. Cal.). [13]  The Court is not required to decide this issue, however, as the administrative record reveals that the Administrative Committee specifically sought to confirm whether, prior to August 1, 2003, and the onset of his illness in at the end of April 2003,  Henderson was a Williams employee, or, instead, an independent contractor.  Because the Court finds the Committee's determination to be rationally connected with, and adequately supported by, the evidence in the *administrative* record, the Court affirms the Plan Administrator's determination that the first date that Henderson could have been a Participant in the Plan was August 1, 2003, and that he was not actively at work on that date.  Thus, he never became a Participant in the Plan and is not entitled to LTD benefits thereunder.

      To explain further, the Court notes that the Plan Administrator specifically sought and received confirmation from Williams's Human Resources Department that Henderson was a "contractor" with CDI, that Williams had recently agreed to hire him full time, and that his start date as a Williams employee had been delayed, because of his illness, surgery, and recovery time, until August 1, 2003, when he initially was anticipated to return to his job duties.[14]  There is no dispute that Henderson did not report to work on August 1, 2003, or thereafter.[15]  The Plan also authorizes the Plan Administrator to rely on information from Williams.   While the Court might question this reliance if colorable evidence to the contrary was received by the Plan Administrator, the Court does

---

[13]    *Abraham v. Exxon Corp.*, 85 F.3d 1126 (5th Cir. 1996), appears distinguishable in that the "leased employee" provision there seemingly did not simply incorporate section 414(n) of the IRS Code into its definition. Further, the Fifth Circuit's opinion did not analyze the issue of whether the claimant there was a leased employee. Rather, the real question was whether a leased employee lawfully could be excluded from an ERISA plan.

[14]    A. Rec. at 7-19, 20-21, 171-180, 182-90, 206, 209, 213, 216, 219, 224, 234, 228, 244-45, 268, 269, and 330.

[15]    *Id.* at 206, 209, 213, 234, and 244-45.

not find that to have happened here.

Specifically, the Court appreciates that the evidence presented by Plaintiffs in this proceeding, *e.g.*, the transcript of the deposition of Charles Nash of CDI Corporation, provides some support for the notion of Henderson having common law employee status.[16] That evidence was not presented to the Plan Administrator, however, and, as reflected by the jurisprudence above, therefore cannot be considered by this Court. Indeed, there is no indication that Henderson, alone or through counsel, simply advised the Plan Administrator of any of the facts reflected in the Nash deposition that may have put it on notice that further inquiry regarding Henderson's possible status, pre-August 1, 2003, as a common law employee would be necessary. Although the Court would not expect that deposition transcript to have been available during the administrative proceeding, Henderson certainly could have explained the nature of his duties, who provided him with supervision, what contact he had with CDI, etc.

The Court recognizes that Henderson, through counsel, notified the Plan Administrator during the appeal process that he believed it was using an incorrect date of hire, and that the date should be in 2001.[17] The only support offered for this assertion, however, was a general reference to the various documents regarding transactions between Geonet and certain Williams entities, and amongst various Williams entities, and the submission of those documents.[18] The administrative record reveals that those documents were considered by the Administrative

---

[16]      *See* Plaintiff's Memorandum, Exh.2 (Rec. Doc. No. 60).

[17]      A. Rec. at 319-21.

[18]      A. Rec. at 22, 43, 319-21;  A. Rec. at MMP002-129.

Committee and rejected as establishing an earlier date of hire.[19]  On the showing made, the Court

must agree with this conclusion. The record also reveals that, in response to Henderson's appeal and

request for reconsideration, the  Administrative Committee again considered Henderson's history

with Williams, and his status with CDI, based on information obtained from Williams during the

claim review.[20]

       Finally, Plaintiffs have attached to their motion for summary judgment an April 7,

2003 letter from Williams that was signed by Henderson on April 22, 2003.[21]  Although the Court

is not certain that this letter was ever made part of the administrative record, a reference appears to

be made to it in Henderson's counsel's letter dated August 20, 2004.[22]  Even if the Court considers

the letter, it is not supportive of the notion that Henderson  accepted a promotion, rather than first-

time status as a Williams employee, at the end of April 2003.  The Court  particularly notes that the

letter references "our offer to join Williams," that Henderson "will receive all regular benefits

offered to employees of Williams Energy Services," and that the Williams offer  was contingent on

Henderson's acceptance, provision of certain documents, and successfully completing a background

investigation and drug screen.  There is no evidence before the Court that these contingencies were

satisfied such that Henderson's "date of hire" with Williams occurred prior to his illness and ensuing

absence from work.

---

[19]     A. Rec. at 1-21, 42, 171- 190.

[20]     A. Rec. at 1-21, 181-190,  and 171-176.    For clarity of the record, the Court notes that the initial denial letter is found at  A. Rec. at 315-17.

[21]     *See* Plaintiffs' Memorandum, Exh. 3 (Rec. Doc. No. 60).

[22]     A. Rec. at 319-21.

B.      Geonet Gathering, L.L.C.'s Cross-Motion for Summary Judgment
        (Rec. Doc. No. 90).

With its motion for summary judgment, Geonet seeks to recover from Magellan the sums it expended in defending and settling Plaintiffs' claims asserted against it.  These contractual defense and indemnity claims are based on Article 12 of the Purchase and Sale Agreement entered into by Geonet and Williams Terminals Holding, L.P., as of October 18, 2001.[23]  Magellan acquired the interest held by Williams Terminals Holding, L.P. in June 2004.

Geonet and Magellan agree that, under the Purchase Sale Agreement, Geonet, as the Seller, bears responsibility for all "liabilities and obligations with respect to Employees arising *before*" October 31, 2001, and claims or losses resulting from ownership or operation of the dock facility, as  well as events occurring or conditions existing, *prior* to October 31, 2001.[24]  Similarly, these parties agree that Magellan, as Buyer:  (1) bears responsibility for all "liabilities and obligations with respect to the compensation and benefits of those Employees, if any, who are employed by buyer and which arise with respect to employment with Buyer" *after* October 31, 2001; and (2) claims or losses resulting from ownership or operation of the dock facility *after* October 31, 2001.[25]  Thus, the parties dispute only whether Plaintiffs' claims against Geonet are based on injuries arising out of acts or omissions occurring before or after October 31, 2001.

Having reviewed Plaintiffs' Second Supplemental and Amended Complaint (Rec. Doc. No. 30), which re-alleged all of the allegations, claims, and statements of fact contained in the original Petition and Supplemental and Amended Complaint, the Court finds that Plaintiffs' claims

---

[23]      *See* Exhibit A to Geonet's Memorandum (Rec. Doc. No. 90).

[24]      *Id.* at ¶¶ 8.3.2 and 12.2 (emphasis added).

[25]      *Id.* at ¶¶ 8.3.2 and 12.3 (emphasis added).

in this matter include claims arising out of acts and omissions allegedly occurring both before and after October 31, 2001.  Specifically, reviewing Paragraphs X - XVII of that document together makes it apparent that Paragraphs X and XI  refer to employment practices and working conditions existing during Geonet's ownership and operation of the dock facility, *i.e.* before October 31, 2001.  Given that Geonet has not demonstrated that any portion of the defense or settlement costs that it incurred in this matter are attributable to the post-October 31, 2001 time period, in the manner and to the extent required by Rule 56 of the Federal Rules of Civil Procedure, the Court finds Geonet's motion for summary judgment to be without merit.

### III.  CONCLUSION

Although the Court is sympathetic with Plaintiffs' plight, the Court, for the reasons stated above,  finds that no genuine issue of material fact exists with respect to the ERISA claim for long-term disability benefits, and that Defendants are entitled to judgment as a matter of law on that claim.  With respect to Geonet's motion for summary judgment against Magellan, the Court finds that Geonet has not borne its burden as movant under Rule 56 of the Federal Rules of Civil Procedure.  Accordingly, **IT IS ORDERED** that (1) Defendants' Motion for Partial Summary Judgment (Rec. Doc. No. 55)  is **GRANTED**;  (2) Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. No. 60) is **DENIED**; and (3) Geonet Gathering, L.L.C.'s Cross-Motion for Summary Judgment (Rec. Doc. No. 90) is **DENIED**.

New Orleans, Louisiana, this __30th__ day of March 2007.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**